**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLINTON REILLY,

    Plaintiff,

v.

MEDIANEWS GROUP INC,

    Defendant.
                                                         /

No. C 06-04332 SI

**ORDER RE: MOTION TO INTERVENE AND UNSEAL DOCUMENTS**

Media Alliance and the San Francisco Bay Guardian have moved to intervene in this action and unseal all documents filed in this case. Hearing on the motion is currently scheduled for January 26, 2007. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is appropriate for resolution without oral argument, and VACATES the hearing. As set forth below, the Court GRANTS IN PART the motion to intervene and unseal records.

**BACKGROUND**

Media Alliance and the San Francisco Bay Guardian ("intervenors") have moved to intervene in this action for the limited purpose of requesting that the Court unseal and make public all documents filed in this case. In response to intervenors' motion, defendants have agreed to unseal most of the documents previously filed under seal, but have identified nineteen documents or portions of documents that they wish to remain under seal.[1]

---

[1] Defendants MediaNews Group, Inc. ("MNG") and California Newspapers Partnership ("CNP") filed the principal response to intervenors' motion. Defendants Gannett Co., Inc. and Stephens Group, Inc., have joined in that response. Defendant Hearst has filed a response "tak[ing] no position regarding the specific documents that the MNG/CNP Response seeks to remain sealed." Plaintiff has not filed any

1   The underlying antitrust case concerns the ownership and control of daily newspapers in the greater San Francisco Bay Area, currently defined by the parties as encompassing San Francisco, Alameda, Contra Costa, Marin, San Mateo, Santa Clara, and Solano counties. By this action, plaintiff Clinton Reilly seeks to block and undo a series of transactions through which, he claims, the past and present owners of the major Bay Area newspapers have begun to consolidate ownership of those newspapers, to divide up the geographic markets, and ultimately to forego competing with each other.

The documents at issue on this motion were filed by the parties in connection with two requests for a temporary restraining order brought by plaintiff. Most, if not all, of the documents were filed under seal because they had been designated as "confidential" by one of the parties during the discovery process, pursuant to the parties' stipulated protective order. As mentioned, the defendants have now narrowed the number of records that they wish to keep under seal to nineteen, which they have lettered "a" through "s."

## LEGAL STANDARD

The Ninth Circuit, in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), recently gave a thorough overview of the public's right of access to judicial records. The court began by noting: "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Id.* at 1178 (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 & n.7 (1978)). "This right is justified by the interest of citizens in 'keeping a watchful eye on the workings of public agencies.' Such vigilance is aided by the efforts of newspapers to 'publish information concerning the operation of government.'" *Id.* (quoting *Nixon*, 435 U.S. at 598).

In general, court records may only be sealed for "compelling reasons." As the Ninth Circuit stated in *Kamakana*:

> [A] "strong presumption in favor of access" is the starting point. A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. That is, the party must "articulate[] compelling reasons supported by specific factual findings," that outweigh the general

---

response to intervenors' motion.

> history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'" In turn, the court must "conscientiously balance[] the competing interests" of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."

*Id.* at 1178-79 (citations omitted).

The Ninth Circuit, however, has also identified two exceptions to the "compelling reasons" standard. First, there are certain documents that have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). The Ninth Circuit "has identified two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Kamakana*, 447 F.3d at 1178.

The second exception to the "compelling reasons" standard is more relevant to this motion. The Ninth Circuit stated:

> We have, however, carved out an exception to the presumption of access to judicial records, for a sealed discovery document attached to a non-dispositive motion, such that the usual presumption of the public's right of access is rebutted. There are, as we explained in *Foltz*, "good reasons to distinguish between dispositive and nondispositive motions." 331 F.3d at 1135. Specifically, the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action.
>
> The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials. . . . Thus a "particularized showing," under the "good cause" standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions.
>
> In sum, we treat judicial records attached to dispositive motions differently from records attached to non-dispositive motions. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" support secrecy. A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to nondispositive motions.

*Id.* at 1180-81 (citations omitted).

Civil Local Rule 79-5 establishes the procedures by which a document may be filed "under seal" in the Northern District. The Rule states, in pertinent part:

> (a) . . . . A sealing order may issue only upon a request that establishes that the document, or portions thereof, is privileged or protectable as a trade secret or otherwise entitled to protection under the law, (hereinafter referred to as "sealable.") The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(b) or (c). A stipulation, or a blanket protective order that allows a party to designate documents as sealable, will not suffice to allow the filing of

3

documents under seal.

. . . .

(d) Filing a Document Designated Confidential by Another Party. If a party wishes to file a document that has been designated confidential by another party pursuant to a protective order, or if a party wishes to refer in a memorandum or other filing to information so designated by another party, the submitting party must file and serve an Administrative Motion for a sealing order and lodge the document, memorandum or other filing in accordance with this rule. . . . Within five days thereafter, the designating party must file with the Court and serve a declaration establishing that the designated information is sealable, and must lodge and serve a narrowly tailored proposed sealing order, or must withdraw the designation of confidentiality. If the designating party does not file its responsive declaration as required by this subsection, the document or proposed filing will be made part of the public record.

. . . .

(f) Effect of Seal. Unless otherwise ordered by the Court, any document filed under seal shall be kept from public inspection, including inspection by attorneys and parties to the action, during the pendency of the case. . . .

Civ. L.R. 79-5.

**DISCUSSION**

**I.    Motion to intervene**

Defendants do not oppose intervention for the limited purpose of challenging the sealing of documents filed to date. Defendants express concern, however, with the intervenors' continued role in this case. "To the extent the Court contemplates a continuing role for proposed intervenors in this litigation, MediaNews and CNP request that the Court be mindful of, and attempt to avoid, the delay and distraction likely to be caused by extensive litigation of sealing issues, particularly given the expedited schedule adopted in this matter." Opp. at 2:18-21. In reply to defendants' concerns, intervenors request that the Court allow them to remain as intervenors for the "purpose of being party to any future requests for sealing orders." Reply at 2:6-7. Allowing them continuing status as intervenors, they argue, will be more efficient than forcing them to newly move for intervention each time they wish to challenge the sealing of a document. The Court agrees with intervenors. Many more documents are likely to be filed under seal in this case, and intervenors will likely seek access to those documents that appear improperly sealed. The parties and the Court will therefore be far less burdened if intervenors do not have to move for intervention each time a document is filed under seal. The Court

4

is not unmindful of defendants' concern with protracted and distracting disputes over the sealing of documents. The best way to avoid such disputes, however, is for the parties to closely adhere to the procedures of the Local Rules and the standards set out in *Kamakana*, as discussed above, when they seek to seal a document.

## II. Motion to unseal

### A. Procedural defects of the underlying motions to seal

Intervenors first argue that all of the records must be unsealed because the parties did not follow the proper procedures, as outlined in Local Rules 79-5(d), for sealing document designated as confidential by the opposing party. Most of the records here at issue were produced during discovery and labeled "confidential" under the parties' stipulated protective order. In connection with the various motions the Court has heard to this point, the parties have filed many of these "confidential" documents that were produced by the opposing party. As discussed above, Local Rule 79-5(d) requires the party that designated a document as confidential to file, within five days of the document being lodged with the Court, a declaration establishing that the document is sealable. If the designating party fails to do so, the document is filed unsealed. Civ. L.R. 79-5(d).

Intervenors are correct that the parties did not follow the strictures of Rule 79-5(d) in filing many of the documents at issue here; the "designating party" did not file a declaration within five days of the documents being lodged. Nonetheless, the Court granted the parties' motions to file the documents under seal. The parties' failure to follow the proper procedures is therefore a moot point. The purpose of requiring the designating party to file a declaration in support of sealing is to help the Court determine whether the document at issue merits being filed under seal. That is also the determination the Court must make on this motion.

### B. Good cause to seal

The parties dispute what standard the Court should use in determining whether the records at issue should remain sealed. Intervenors argue that, rather than the standards outlined by the Ninth Circuit in *Kamakana*, the Court must apply the standards outlined in Local Rule 79-5. As discussed,

5

United States District Court
For the Northern District of California

Rule 79-5(a) states that a record is only sealable if it is "privileged or protectable as a trade secret or otherwise entitled to protection under the law." Intervenors suggest that "entitled to protection under the law," requires the parties to show more than what is required under the *Kamakana* framework. The Court disagrees. *Kamakana* establishes how a party shows that a document is "entitled to protection under the law." Rule 79-5(a) requires no more, and no less.

The records at issue here were filed in connection with non-dispositive motions. As discussed, under *Kamakana*, "a 'particularized showing,' under the 'good cause' standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to nondispositive motions." 447 F.3d at 1180. The Court therefore must examine each disputed record to determine if defendants have made a "particularized showing" of "good cause" to warrant maintaining the records under seal, or to warrant protection under Rule 26(c). Under Rule 26(c):

> For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. . . . "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" []. If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.

*Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citations omitted). The district courts have "broad latitude" under Rule 26(c) "to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Id.* The Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Having examined each of the nineteen records or record excerpts at issue, the Court determines that defendants have established good cause to maintain the seal on all but two. The bulk of the records contain detailed financial information, including past and present revenues, and projections of future revenues. The financial information relates not only to the Bay Area newspapers at issue in this case, but also to newspapers and other financial interests around the country. The Declaration of Joseph J. Lodovic provides an explanation, for each record, of how such information, if unsealed, would potentially cause harm to the defendants, and others. *See* Lodovic Decl. ¶ 11. In particular, Lodovic

6

explains that the revenue information and projections might allow competitors to anticipate and react to actions taken by defendants in the future. *See* Lodovic Decl. ¶¶ 7, 11. Such information might also help the bargaining position of companies that negotiate with defendants in the future. Furthermore, the future projection information might expose defendants to liability to investors who rely on such projections, and might force defendants to make further disclosures to satisfy the reporting requirements of the SEC. *See* Oppo. at 10:15-25; Lodovic Decl. ¶ 10. After examining each record in dispute, and each explanation by Mr. Lodovic, the Court finds that defendants' concerns constitute "good cause" for maintaining the bulk of the records under seal.[2]

The Court does, however, find two exceptions to its finding of "good cause." First, with respect to record "a," defendants request that the entire paragraph beginning "Because of Hearst's . . .," on page HEARST000320 of Exhibit 2 to the Shulman Declaration, remain under seal. The Court finds that the concerns discussed above justify keeping the second sentence of that paragraph under seal. The remainder of the paragraph, however, does not contain the sensitive financial information that defendants express concern with. The Court therefore ORDERS that all but the second sentence of the paragraph be unsealed.

Second, with respect to record "f," defendants request that "10 pages beginning with page marked 3 and through page marked 6, and page 8," remain under seal, because:

> [t]his exhibit contains balance sheets for MediaNews properties segmented by geographic region and a statement of operations that contains recent figures for advertising and circulation revenue and itemized expenses. This information would be of particular value to competitors as it is segmented by geographic region and by revenue source, and competitors . . . could use it to target specific revenue streams of specific MediaNews properties.

Lodovic Decl. ¶ 11(f). The Court agrees with defendants' assessment with respect to seven of the ten pages identified. However, the pages marked 4, 5, and 6, do not contain "balance sheets" or "recent figures for advertising and circulation and itemized expenses." The concerns cited by defendants therefore do not apply to these pages. The Court ORDERS the pages marked 4, 5 and 6, in Exhibit 21 of the Supplemental Shulman Declaration, and Exhibit 1 of the Asher Declaration, unsealed.

---

[2]Moreover, none of the nineteen records in dispute have been relevant to the Court's findings in the underlying case, to this point. The "public interest in understanding the judicial process," *Kamakana*, 447 F.3d at 1179, is therefore of little to no weight in the face of defendants' concerns.

7

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART the motion to intervene and to unseal records filed by Media Alliance and the San Francisco Bay Guardian. (Docket No. 114). With the two exceptions discussed above, records "a" through "s," as described by defendants, shall remain under seal. The party that originally filed each document to be unsealed shall re-file those documents in accordance with this order.

**IT IS SO ORDERED.**

Dated: January 24, 2007

SUSAN ILLSTON
United States District Judge